# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 09-CV-3325 (JFB)(ARL)

————————————

DEBORAH YOUNG, INDIVIDUALLY AND AS THE PARENT AND NATURAL GUARDIAN OF MELISSA YOUNG, EMMALEE YOUNG, AND CECELIA YOUNG,

Plaintiff,

VERSUS

SUFFOLK COUNTY, SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, SUFFOLK COUNTY POLICE DEPARTMENT, MICHAEL DELGADO, JOSEPH QUATELA, EDMUND COPPA, INDIVIDUALLY, EDMUND J. COPPA PHOTOGRAPHY, RAYMOND L. YOUNG, RAYMOND M. YOUNG, NEWS 12, NEWSDAY, NEW YORK POST, NEW YORK DAILY NEWS, WCBSTV.COM,

Defendants.

————————————

**MEMORANDUM AND ORDER**
April 9, 2010

————————————

JOSEPH F. BIANCO, District Judge:

On July 30, 2009, plaintiff Deborah Young (hereinafter "plaintiff" or "Ms. Young"), individually and as the parent and guardian of Melissa Young, Emmalee Young, and Cecelia Young, brought this action against defendants Suffolk County, Suffolk County Department of Social Services, Suffolk County Police Department, Michael Delgado, (collectively the "County defendants"), Edmund Coppa, Edmund J. Coppa Photography, News 12, Newsday, New York Post, New York Daily News, WCBSTV.COM (collectively the "media defendants"), Raymond L. Young and Raymond M. Young (together "Young defendants"), and Joseph Quatela, pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging, *inter alia*, that defendants violated plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment, and participated in a conspiracy to deprive plaintiff of her constitutional rights. Plaintiff also brings claims for constitutional violations pursuant to 42 U.S.C. § 1982 ("§ 1982"), 42 U.S.C. § 1985 ("§ 1985"), and 42 U.S.C. § 1986 ("§ 1986"). Plaintiff further alleges state law claims for intentional infliction of emotional

distate and defamation.[1]

The claims in this lawsuit arise from an incident on February 21, 2007, in which plaintiff's former husband, defendant Raymond L. Young, allegedly: (1) trashed plaintiff's residence in Lindenhurst, New York, to create the appearance of an unsafe and unsanitary home; (2) contacted the police and entered the residence with the police without plaintiff's consent or authorization; and (3) invited the media to film the inside of the home. Plaintiff asserts that the police actions on that day—which were allegedly part of a conspiracy among the County employees, Mr. Young and his father (defendant Raymond M. Young), Joseph Quatela (who was Mr. Young's attorney and also allegedly present at the time of entry into the residence on that date), and the media defendants—violated her constitutional rights and resulted in her losing custody of her three children in Family Court. On May 4, 2007, in Suffolk County Family Court, plaintiff pled guilty to neglect of her three children, acknowledging that she suffers from a mental health condition that negatively impacted her ability to care for them. On January 27, 2010, Raymond L. Young was awarded sole custody of the children. According to plaintiff's counsel, plaintiff is appealing that state court decision.

Presently before the Court are two motions to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by the Young defendants and the media defendants, and a motion for judgment on the pleadings under Rule 12(c), filed by defendant Joseph Quatela. For the reasons set forth below, the Court grants these motions in part and denies these motions in part. First, the Court denies the motions to dismiss plaintiff's § 1983 claims for violation of the Fourth Amendment and conspiracy as against the Young defendants and defendant Quatela but grants the media defendants' motion to dismiss plaintiff's § 1983 claims against them in entirety. In particular, assuming the allegations in the amended complaint to be true, plaintiff has asserted a plausible § 1983 claim that the Young defendants and Quatela, acting jointly with the police, entered and searched plaintiff's residence on February 21, 2007 without authorization in violation of the Fourth Amendment. On the issue of the requisite state action, plaintiff alleges far more than that the Young defendants and Quatela simply furnished information to the police; rather, plaintiff alleges fabrication of evidence, furnishing information to the police regarding the fabricated evidence, summoning the police to the residence, providing the police with an unauthorized consent to search, and then unlawfully entering the residence with the police. This series of allegations against the Young defendants and Quatela is sufficient to survive a motion to dismiss, including on the issue of state action. Although Raymond L. Young argues he provided valid consent to enter and search, that issue cannot be resolved at the motion to dismiss stage in this case. However, with respect to the media defendants, plaintiff has only alleged a conclusory allegation of a "media ride-along," without a single specific allegation to support the claim that the media was acting jointly with the police. In fact, the amended complaint alleges that the media

---

[1] The amended complaint states that plaintiff brings a cause of action for "defamation/slander." Because it appears that plaintiff is alleging that defamatory statements were made by the defendants both verbally and in writing, the Court interprets her claim for defamation to encompass both slander and libel.

defendants were invited by the Young defendants, not the police, thus further eviscerating any plausible theory of conspiracy or joint state action between the media and the County defendants. Thus, given the absence of any non-conclusory allegation supporting a plausible claim of state action involving the media defendants, the § 1983 claims against them must be dismissed. Second, as to all the moving defendants, the Court also grants the motions to dismiss plaintiff's Fourteenth Amendment equal protection and condemnation claims under § 1983. Third, the Court grants the moving defendants' motions to dismiss plaintiff's claims for violations of §§ 1982, 1985, and 1986. Fourth, the Court further dismisses plaintiff's state law claims for intentional infliction of emotional distress and defamation against all moving defendants. Finally, the Young defendants have also filed a motion for sanctions under Rule 11 against plaintiff and her counsel. The Court concludes that sanctions are not warranted, and, thus, that motion is denied.

In sum, with the exception of the media defendants, the lawsuit will proceed to discovery under the direction of Magistrate Judge Lindsay as to the § 1983 claim involving the alleged Fourth Amendment violation and the § 1983 conspiracy claim. The Court emphasizes that, although the parties continue to reference (including during oral argument) and argue about the merits of the custody litigation in state court, those issues are not before this Court and are not going to be litigated in the instant lawsuit. Instead, the issue here is a much narrower one—namely, whether there was a conspiracy to commit, and/or the effectuation of, an unconstitutional intrusion into the plaintiff's home without consent on February 23, 2007, and, if so, whether any of the remaining

defendants are liable for that conduct. Therefore, this issue should be the focus of discovery, rather than an effort to improperly re-litigate the custody issue in this Court.

## I. BACKGROUND

### A. Facts

For purposes of these motions to dismiss and for judgment on the pleadings, the Court has taken the facts described below from the plaintiff's amended complaint ("Am. Compl."), filed with the Court on October 2, 2009. These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

In or around February 2007, plaintiff and her children were residents of a home located at 239 Nevada Street, Lindenhurst, New York. (Am. Compl. ¶ 4.) At all relevant times herein, plaintiff and her children possessed exclusive use and occupancy of that home. (*Id.*) This home was owned by defendant Raymond L. Young, plaintiff's husband and the father of plaintiff's three children, and Raymond L. Young's father, Raymond M. Young. (*Id.* ¶ 38.) The Young defendants were responsible for the home's condition. (*Id.*)

On October 31, 2006, defendant Raymond L. Young consented and stipulated to sole custody of the infant children with the plaintiff. (*Id.* ¶ 16.) According to the complaint, Raymond L. Young was estranged from his wife and children for many years and failed to pay child support, maintenance, and other household expenses ordered by the

court. (*Id.* ¶ 38.) Due to Raymond L. Young's failure to make such payments to plaintiff, the water and phone services at 239 Nevada Street were often discontinued. (*Id.*)

Plaintiff alleges that, on or about February 19, 2007, plaintiff and her children left their home for Windham, New York, for a vacation. (*Id.* ¶ 18.) At the time, plaintiff was considering moving away from 239 Nevada Street permanently to move in with plaintiff's parents, who reside in Windham. (*Id.*)

Plaintiff further alleges that on February 21, 2007, during the late afternoon or early evening, the defendants, without plaintiff's presence, permission, consent, authority, or knowledge, wrongfully entered the home at 239 Nevada Street and invaded the privacy of plaintiff and her children by "looking, peering, viewing and peeping into their home, searching, seizing, trespassing, and ransacking said premises." (*Id.* ¶ 17.) Specifically, plaintiff alleges that Raymond L. Young and others "brought garbage, debris, urine, feces and other matters into the premises" at 239 Nevada Street while she and her children were absent in order to create unsanitary, unhabitable, and unsafe conditions therein. (*Id.* ¶ 19.) Plaintiff further alleges that, after trashing the premises, Raymond L. Young summoned others, including workers, friends, his father, the police, his attorney Joseph Quatela, the Department of Social Services, the media, and others to the property. (*Id.* ¶ 20.) Plaintiff claims that the entry of the house by the Suffolk County Police Department, the Department of Social Services, and other agencies, without plaintiff's permission, was a "warrantless invasion and search" that violated her Fourth Amendment rights under the U.S. Constitution and the New York State Constitution. (*Id.* ¶ 21.) Plaintiff also argues that this was a "condemnation of property without compensation since [plaintiff] had lost a valuable and lawful use to which the property may be applied." (*Id.* ¶ 22.)

According to plaintiff, on February 21, in addition to unlawfully entering and searching the premises, the County defendants and the Young defendants invited and permitted the media to "ride along" with them, in violation of the Fourth Amendment, when they entered the premises at 239 Nevada Street without the knowledge, permission, or consent of plaintiff. (*Id.* ¶¶ 29, 36.) Plaintiff further alleges that it was the official policy or custom of Suffolk County and the Suffolk County Police Department to invite the media on such "ride alongs." (*Id.* ¶ 39.) The media was allegedly permitted to enter, look at, walk around, take photographs of, and take notes regarding the premises and its contents during that ride along. (*Id.* ¶¶ 31, 33.) These pictures and reports were subsequently published in local, county, and state newspapers in Suffolk County, Nassau County, New York City, and New York State, and otherwise distributed via the internet. (*Id.* ¶ 32.) Plaintiff alleges that the presence of the media did not assist the police or aid in any law enforcement functions. (*Id.* ¶¶ 34, 37.)

As a result of the entry and inspection of the premises by defendants on February 21, plaintiff claims that the defendants collectively and individually caused news stories and other false accounts about plaintiff and her children to be published in the media. (*Id.* ¶ 23.) On February 23, 2007, as a result of the condition in which the residence at 239 Nevada Street was found, plaintiff appeared in Suffolk County Family Court, and the children were removed from plaintiff's custody. (*Id.* ¶ 24.) The children were placed into the custody of the Department of Social

Services, and thereafter into foster care. (*Id.*) While in foster care, plaintiff alleges that her children's grades and lifestyle have suffered, and they have been denied visitation and socialization with plaintiff and with each other. (*Id.* ¶ 26.) Plaintiff further argues that the placement of the children in foster care has scarred them emotionally, psychologically, and developmentally. (*Id.* ¶ 27.) Plaintiff contends that the invasion of the home at 239 Nevada Street was orchestrated by defendant Raymond L. Young so that plaintiff's children would be removed from plaintiff's custody, and so that Mr. Young would not be responsible for payment of child support or maintenance. (*Id.* ¶ 25.)

B. Prior State Court Proceedings

The instant lawsuit is but one in a long series of legal proceedings between these parties. In December 2005, Raymond M. Young and his wife, the paternal grandparents of the Young children, commenced a lawsuit against Ms. Young in Suffolk County Supreme Court, alleging intentional infliction of emotional distress, harassment and intimidation, prima facie tort, and injurious falsehood. That lawsuit was dismissed by Judge Jeffrey Arlen Spinner on July 18, 2006, for failure to state a cause of action and raise a triable issue of fact. *See Young, et al. v. Young*, No. 2005-27931 (N.Y. Sup. Ct. 2006).

On October 31, 2006, Deborah Young and Raymond L. Young entered into a stipulation of settlement, pursuant to which they resolved their matrimonial issues, and Ms. Young was given sole custody of the children. On March 5, 2007, Suffolk County Department of Social Services filed a petition of neglect to have the children removed from Ms. Young's custody. On May 4, 2007, in Suffolk County Family Court, Deborah Young pled guilty to neglect

of her three children. Specifically, Ms. Young acknowledged that she suffered from a mental health condition that negatively impacted her ability to care for her children. Tr. of Proceedings, at 4-7, *Suffolk County CPS v. Young*, Nos. NN-3875-07, NN-3876-08, NN-3877-07 (N.Y. Fam. Ct., Suffolk County May 4, 2007). The children were placed in foster care.

By Order to Show Cause dated November 25, 2007, Raymond L. Young sought to vacate the marital stipulation of settlement on the ground that he was fraudulently induced into signing the agreement. Raymond L. Young contended that he was the victim of parental alienation and claimed that he was wrongfully accused of acts of violence and sexual abuse against the children. On October 19, 2007, a Permanency Hearing Order was issued by the Suffolk County Family Court. On July 2, 2008, an order was issued which permitted, with certain conditions, unsupervised visitation between the children and both parents. Visitation with both parents was increased by order dated September 4, 2008, and visitation with both paternal and maternal grandparents, with certain conditions, was ordered on November 10, 2008. *See Young v. Young*, Nos. N-3875-07, N-3876-07 and N-3877-07 (N.Y. Fam. Ct., Suffolk County, Jan. 27, 2010) (slip opinion). On June 4, 2009, visitation to both parents was expanded to unsupervised overnight weekend visitation. Additional summer visitation to both parents was ordered on July 9, 2009. *Id.* In an opinion dated January 27, 2010, issued while the instant action was pending, Raymond L. Young was awarded sole custody of the children. *Id.*

On April 30, 2008, Raymond L. Young filed suit in Suffolk County Supreme Court against Deborah Young, her parents, Suffolk

County Department of Social Services, and a host of other defendants, alleging that Ms. Young and her parents made numerous unfounded reports to authorities that the children were sexually, physically, and otherwise abused by Raymond L. Young and his parents and that Ms. Young and her parents also manipulated and compelled the children to complain to authorities about the fabricated abuses. Ms. Young and her parents asserted several counterclaims against Raymond L. Young. The court dismissed Raymond L. Young's claims for intentional infliction of emotional distress, malicious prosecution, and prima facie tort. *See Young, et al. v. Vasquez, et al.*, No. 08-14394, slip op. at 2-4 (N.Y. Sup. Ct. 2009). The court also dismissed Ms. Young's counterclaims for intentional infliction of emotional distress, defamation, abuse of process and malicious prosecution, invasion of privacy, trespass to chattels, and alienation of affection. *Id.* at 5-6.

Raymond L. Young has also commenced a separate lawsuit against the therapists involved in this matter, under the caption *Young v. Campbell, et al.*, No. 009623-09. That action is currently pending in Suffolk County Supreme Court.

## C. The Instant Action

Plaintiff initiated this action on July 30, 2009. She filed a complaint and an Order to Show Cause to remove her children from foster care and return them to her custody. Judge Joanna Seybert denied the application on that date. On October 2, 2009, plaintiff filed an amended complaint in this action.

Plaintiff brings claims against all defendants, alleging constitutional violations pursuant to §§ 1982, 1983, 1985, and 1986.

Plaintiff brings claims against all defendants for several constitutional violations under § 1983—namely, the Fourth Amendment, the Fourteenth Amendment, and conspiracy to deprive plaintiff of her constitutional rights. Plaintiff also alleges an illegal conspiracy to deprive plaintiff of her constitutional rights under § 1985 and alleges that defendants failed "to remedy the wrongful actions taken against" her and her children, in violation of § 1986. Plaintiff also alleges state law claims for intentional infliction of emotional distress and defamation against all defendants.

## D. Procedural History

Plaintiff filed the initial complaint in this action on July 30, 2009. On August 14, 2009, the Young defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the action and a motion for sanctions. On October 2, 2009, plaintiff filed an amended complaint. The County defendants filed an answer to the amended complaint on October 7, 2009. By letter dated October 23, 2009, the media defendants indicated their intention to move for dismissal of the complaint for failure to state a cause of action upon which relief can be granted. On November 2, 2009, the Young defendants filed their motion to dismiss the action for failure to state a claim. A pre-motion conference for the media defendants' anticipated motion was held on November 6, 2009. On December 4, 2009, the media defendants filed their motion to dismiss. Also on that date, defendant Joseph Quatela filed a motion for judgment on the pleadings. Plaintiff filed opposition papers to the Young defendants' motion to dismiss on December 16, 2009, and opposition papers to the media defendants' motion on January 11, 2010. On January 13, 2010, the County defendants submitted an affirmation stating that they did

not intend to file a motion to dismiss, but noting that they did not concede any of the factual allegations made by other parties in their submissions upon the motions to dismiss. The Young defendants filed a reply on January 14, 2010, and the media defendants filed a reply on January 26, 2010. Plaintiff submitted opposition papers to Quatela's motion for judgment on the pleadings on February 4, 2010. Quatela submitted a reply on February 22, 2010. Oral argument was heard on March 4, 2010. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).[2] "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5)

---

[2] Courts evaluate a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Nicholas v. Goord*, 430 F.3d 652, 657 n.8 (2d Cir. 2005). Accordingly, all defendants' motions are evaluated under the same standard.

facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim"); *Brodeur v. City of New York*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## III. DISCUSSION

### A. § 1983

Plaintiff asserts several constitutional violations under § 1983. To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.[3] "Section 1983

---

[3] Specifically, § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Here, plaintiff's amended complaint asserts violations of the Fourth Amendment and Fourteenth Amendment, and conspiracy under § 1983. The moving defendants now seek to dismiss these claims on the grounds that (1) they were not state actors and, therefore, did not act under color of law as required by § 1983; and (2) plaintiff has failed to state a claim for relief for violations of the Fourth or Fourteenth Amendments, or for conspiracy under § 1983.

### 1. State Actor Requirement

First, defendants argue that, as private persons and private entities, they are not subject to suit under § 1983. Specifically, all moving defendants argue that plaintiff's amended complaint contains no allegations that they are state actors or that they were acting under color of any law at the time of the alleged violations, and, thus, no § 1983 claim against them may lie. In response, plaintiff argues that the Young defendants, Joseph Quatela, and the media defendants (collectively the "private party defendants") acted jointly with the County defendants and are thereby imbued with state action for the purpose of these claims. Viewing all the facts in a light most favorable to plaintiff, the non-moving party, the Court concludes that plaintiff has sufficiently alleged facts to

---

> secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

support a plausible claim that, at the time of the actions alleged by plaintiff, the Young defendants and Quatela were state actors subject to liability under § 1983. Accordingly, the motions by the Young defendants and Quatela to dismiss on this ground are denied. However, the amended complaint does not contain factual allegations that support a plausible claim of state action by the media defendants; rather, it contains conclusory assertions that cannot survive a motion to dismiss by the media defendants. Thus, the media defendants' motion to dismiss is granted in its entirety.

A private actor may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was "'a willful participant in joint activity with the State or its agents.'" *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). This potential liability also applies to a private party who "conspires with a state official to violate the plaintiff's constitutional rights . . . ." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005). Thus, if the plaintiff has sufficiently pled the existence of joint activity by the County defendants and the private party defendants or sufficiently alleged that there was a conspiracy between the private party defendants and the County defendants under § 1983, she will have sufficiently alleged state action by the private party defendants.

The first theory under which plaintiff could demonstrate that the private party defendants were state actors is to allege that they were willful participants engaged in joint activity with the state or its agents. The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) ("Healey's provision of background information to a police officer does not by itself make Healey a joint participant in state action under § 1983 [and] Officer Fitzgerald's active role in attempting to resolve the dispute after Healey requested police assistance in preventing further disturbance also does not, without more, establish that Healey acted under color of law."); *see also Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [§] 1983 . . . ."); *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir. 1978) (declining to hold "that the mere act of furnishing information to law enforcement officers constitutes 'joint (activity) with state officials'"); *cf. Dahlberg v. Becker*, 748 F.2d 85, 89-90, 93 (2d Cir. 1984) (holding that defendants' invocation of New York courts to issue a contempt order "does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor"). Similarly, if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor. *See Shapiro v. City of Glen Cove*, 236 F. App'x 645, 647 (2d Cir. 2007) ("No evidence supports Shapiro's contention that Weiss-Horvath acted jointly with the Glen Cove defendants to deprive her of her constitutional rights, and ample evidence shows that the Glen Cove officials who searched her house exercised independent judgment rather than acting at Weiss-Horvath's direction."); *Butler*, 589

F.2d at 327 (granting summary judgment to private defendant on § 1983 claim because defendant "did [nothing] more than supply information to police officers who then acted on their own initiative in arresting [plaintiff]"); *Serbalik v. Gray*, 27 F. Supp. 2d 127, 131-32 (N.D.N.Y. 1998) ("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." (citing *Auster Oil & Gas Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir. 1985))). Furthermore, one's motivation is irrelevant to the determination of whether one is a state actor. *Kash v. Honey*, 38 F. App'x 73, 75-76 (2d Cir. 2002) (concluding that there was no state action by a private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him, including the purpose of penalizing [plaintiff] for exercising his First Amendment rights . . . falsely charged [plaintiff] in an accusatory instrument"); *Shapiro v. City of Glen Cove*, No. CV 03-0280 (WDW), 2005 WL 1076292, at *7 (E.D.N.Y. May 5, 2005) ("In any event, whatever motivation Horvath may have had in calling in the complaint and alerting the media is irrelevant to the question of whether she was a state actor."). When the private actor takes a more active role, however, and jointly engages in action with state actors, he will be found to be a state actor. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982) (finding that, when a supplier sought prejudgment attachment of a debtor's property, that supplier was a state actor because it "invok[ed] the aid of state officials to take advantage of state-created attachment procedures"); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (holding that defendants who conspired with and participated in bribery with federal judge acted under color of state law); *Adickes*, 398 U.S. at 152 (finding plaintiff entitled to relief under § 1983 against private party if she can prove that private party and police officer "reached an understanding" to cause her arrest on impermissible grounds).

Alternatively, to demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal. *See Carmody v. City of N.Y.*, No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (report and recommendation), *adopted in relevant part by Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005)) (citations and quotations omitted).

In the instant case, the Court concludes that plaintiff's allegations of conspiracy and joint action between the private party defendants and state officers are sufficient to

survive a motion to dismiss with respect to the Young defendants and Joseph Quatela; however, the Court concludes that plaintiff has not alleged sufficient factual basis from which the Court could determine that the media defendants were state actors. When analyzing allegations of state action, the Court must begin "by identifying the specific conduct of which the plaintiff complains." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). In the amended complaint, plaintiff alleges that defendants Raymond L. Young, Raymond M. Young, Joseph Quatela, and the media defendants conspired with the County defendants, who were state actors, to fraudulently and unlawfully violate plaintiff's constitutional rights and then acted jointly with those state actors to effectuate the conspiracy.

Plaintiff alleges that the Young defendants and Joseph Quatela did more than "merely elicit" an exercise of state authority. Instead, plaintiff alleges that those defendants incited the exercise of state authority, then joined in and participated with the exercise thereof. *See Serbalik*, 27 F. Supp. 2d at 132. Plaintiff first alleges that defendant Raymond L. Young "summoned workers, friends, his father, the police, his attorney, the Department of Social Services, the media, and others to the property." (Am. Compl. ¶ 20.) Plaintiff alleges that the invasion of the premises "was orchestrated by the defendant Raymond L. Young, in a vindictive and retaliatory attempt by him to strip Deborah Young of her rightful custodial responsibility of the three children . . . ." (*Id.* ¶ 25.)

Specifically, the amended complaint alleges that defendant Raymond L. Young and others "brought" urine, feces, and other debris "into the premises and strewn [sic] them about." (*Id.* ¶ 19.) Plaintiff then alleges that the Young defendants, Joseph Quatela, and the media defendants "moved about the premises, defaming, embarrassing, ridiculing, and humiliating" the plaintiff and her children. (*Id.* ¶ 20.) Plaintiff further alleges that the County defendants, "*in response to communication from the defendants*, Raymond L. Young, Raymond M. Young, and Joseph Quatela, planned and executed a warrantless invasion and search of Deborah Young's residence in direct violation of her Fourth Amendment rights . . . ." (*Id.* ¶ 21 (emphasis added).) As noted earlier, the Court recognizes that merely summoning the police would not be sufficient to cloak the Young defendants and Joseph Quatela with state action. "[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of a private party." *Fisk*, 401 F. Supp. 2d at 377; *see also Alexis v. McDonald's Rest. of Mass., Inc.*, 67 F.3d 341, 345, 352 (1st Cir. 1995) (restaurant manager was not a state actor, although manager told the police officer she "would like [an unruly customer] to leave" and officer thereafter forcibly removed customer from restaurant, because there was no evidence that the officer substituted the manager's judgment for his own); *Moore v. Marketplace Rest., Inc*., 754 F.2d 1336, 1353 (7th Cir. 1985) (where no evidence of "concerted effort or plan" between a restaurant owner and police officer, owner was not a state actor simply because owner reported customers to officer and told officer where to find them, and customers were subsequently arrested by police officer); *Benavidez*, 722 F.2d at 618 ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable

under § 1983."); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 405 (S.D.N.Y. 2004) (private party who calls for police assistance is not rendered a state actor under § 1983 even if the call caused plaintiff's detainment). However, plaintiff asserts that the Young defendants' "[o]bjective was clearly to influence the action of the state" (Am. Compl. ¶¶ 47, 48), and alleges that the Young defendants did more than simply summon the police. In particular, she alleges that they created the disastrous scene at 239 Nevada Street, summoned the County defendants to the residence, and then assisted in the execution of a "warrantless invasion and search" of the residence. The amended complaint also suggests that this series of events was part of a plan and conspiracy between the defendants. (*Id.*) Plaintiff further alleges that the County defendants acted under the control and influence of the Young defendants and Quatela, who allegedly fabricated evidence, with malicious intent to mislead the police, then called the County defendants to the house to search the premises, and then jointly invaded the home with the police in violation of the Fourth Amendment. *See, e.g., Conte v. County of Nassau*, No. 06-CV-4746 (JFB) (ETB), 2008 WL 905879, at *21 (E.D.N.Y. Mar. 31, 2008) ("Thus, plaintiff is alleging that Detective Shaska was under the control or influence of Guerra based upon their personal relationship and that Guerra was part of the conspiracy with the County Defendants to deprive him of his rights.").

In short, the amended complaint does suggest that the Young defendants were more than "mere complainants" in the underlying scenario. It alleges that they provided the police with a false premise for the search, authorized or consented to the search (even though they allegedly lacked such authority),

and accompanied the police on the alleged unlawful search itself. The plaintiff need not prove the existence of a conspiracy (and thus, that the private persons in the amended complaint were state actors) at this stage. She need only allege a plausible claim that there was an agreement or joint action to inflict an unconstitutional injury and an overt act in furtherance of the goal by the defendants. Plaintiff's amended complaint is sufficient in this regard. The above-referenced allegations, when taken collectively, are sufficient to plead a plausible claim of joint action or conspiracy between the County defendants, the Young defendants, and Quatela.[4]

Defendant Joseph Quatela argues that he cannot be found to have acted "under color of any statute, ordinance, regulation, custom, or usage" because he was a privately retained attorney for private individuals. He cites *Grant v. Hubert*, No. 09-CV-1051, 2009 WL 764559 (E.D.N.Y. Mar. 20, 2009), for the proposition that "[i]t is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law." *Id.* at *1. However, plaintiff does not allege that Quatela acted under color of state law by virtue of his profession. Instead, plaintiff alleges that Quatela was part of a conspiracy with the Young defendants and the County defendants, whereby the group

---

[4] Plaintiff cites *Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000), for the proposition that the Second Circuit has held that by staging a "perp walk" for the benefit of the press, where there is no other law enforcement purpose, police violate an arrestee's Fourth Amendment rights. *Id.* at 213. However, even if that case were applicable to the conduct at issue here, *Lauro* presumes the existence of a state actor, *e.g.*, police officers, staging the perp walk. *Id.* at 208.

conspired to violate plaintiff's constitutional rights. The amended complaint does not merely allege that Quatela provided information to the police and other government agencies that resulted in an "invasion" of plaintiff's resident. (*See id.* ¶ 21.) Instead, as with the Young defendants, the amended complaint argues that the defendants conspired to unconstitutionally invade plaintiff's residence, and that Quatela was present at and participated in that invasion. (*Id.* ¶¶ 20-21; *see also id.* ¶ 45 ("The actions of the defendants, Raymond L. Young, Raymond M. Young, and Joseph Quatela, caused the chain of events that resulted in the unconstitutional search and seizure of the plaintiffs' premises, when the plaintiff was not present.").)[5] As noted earlier, at this stage, plaintiff need not list the place and date of defendants' meetings or the details of their conversations in order to adequately allege the existence of a conspiracy. *See Fisk*, 401 F. Supp. 2d at 376.

However, the allegations with respect to the media defendants are different and cannot survive a motion to dismiss. Plaintiff alleges that the media defendants participated in the exercise of state authority by virtue of their "ride along," with the police. (*E.g.*, Am. Compl. ¶ 37.) The amended complaint contends that the defendants, including the media defendants, "planned and executed a warrantless invasion and search of the premises in direct violation of the plaintiffs' Fourth Amendment rights . . . ." (*Id.* ¶ 28.) It also alleges that "the defendants, collectively and individually caused news stories and other false accounts of the plaintiffs to be published in the media." (*Id.* ¶ 23.) The Young defendants and the County defendants "permitted and invited the media . . . to enter into and remain in the premises and to wander and roam from room to room and from floor to floor to photograph and record" the residence. (*Id.* ¶ 31.) These photographs and pictures were then published by the media in newspapers. (*Id.* ¶ 32.)

The amended complaint by its own terms contradicts the existence of a plausible claim; specifically, plaintiff alleges that "the defendants Raymond L. Young and Raymond M. Young, invited and permitted the media to ride along with the police and other departments, agencies, and defendants and to enter into and remain in the premises without the knowledge, permission or consent of the plaintiffs." (*Id.* ¶ 29.) The amended complaint continues, "Suffolk County and its police department, other departments and agencies, Raymond L. Young and Raymond M. Young, permitted and invited the media including, but not limited to, newspaper reporters and television or other video reporters and photographers to enter into and remain in the premises . . . ." (*Id.* ¶ 31; *see also id.* ¶ 33 ("Upon information and belief, at all material times herein set forth, the media and/or all other defendants were permitted to enter into the premises and look at, inspect and look through the personal possessions and belongings of the plaintiffs").) Moreover, plaintiff specifically disclaims the media's involvement in state action: "At all material times hereinafter set forth, the presence of the media inside of the premises was not related to the objectives of the questionable intrusion,

[5] Furthermore, to the extent that Mr. Quatela claims immunity from liability due to the fact that he was acting within the scope of his representation, assuming *arguendo*, that this were a defense to the instant cause of action, the Court notes that whether Mr. Quatela was acting within the scope of his representation is a question of fact that cannot be resolved at the motion to dismiss stage of the proceedings.

and the media did not assist the police and was not in aid of the execution of the warrantless search and seizure." (*Id.* ¶ 34.) Indeed, plaintiff specifically disclaims that the media was involved in the conspiracy or scheme to violate plaintiff's constitutional rights. Instead, the amended complaint alleges that the media arrived at the home by invitation and entered with the permission of the private party defendants already on the premises. "Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fisk*, 401 F. Supp. 2d at 377.

Plaintiff's allegations regarding the alleged "media ride along" are conclusory and do not suffice to save plaintiff's claim. Aside from using the conclusory phrase "media ride along" repeatedly throughout the amended complaint, plaintiff alleges no facts to bolster the theory that there was such a ride along. Specifically, plaintiff offers no allegations that suggest that the media arrived in the same vehicles as the County defendants or that the media defendants even arrived at the same time as the County defendants. In *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205 (9th Cir. 2002), a plaintiff sued several media defendants, alleging that her Fourth Amendment rights had been violated by the media's presence, photographing and filming, during an unlawful search of her property. *Id.* at 1207. One media defendant's "only role during the search was to gather information as a reporter and a photographer. He rendered no assistance to the Humane Society and in no way facilitated its ability to search the premises." *Id.* at 1208. The Ninth Circuit found that, although "in certain circumstances a litigant may seek damages under 42 U.S.C. § 1983 from a private party based on a

violation of a constitutional right," *id.* at 1209, the media had not engaged in state action. The court in *Brunette* rested its holding that there was no joint action between the media and the state on the fact that "the Media retained control over what footage to photograph and which events to memorialize. Neither the Media nor the Humane Society assisted the other in performance of its separate and respective task." *Id.* at 1212; *see also id.* at 1213 ("The Media's actions were its own; they were not 'state actions' directed by or jointly conceived, facilitated or performed by the Humane Society.").[6] In the instant case, as in *Brunette*, the media and the state parties are not alleged to have assisted the other in the performance of its separate tasks. Plaintiff does not allege that the media assisted the state in executing the search of 239 Nevada Street. In fact, as discussed *supra*, plaintiff specifically disclaims that the media did so. Nor does plaintiff allege that the state took an active role in the media's function at the premises. Instead, the County defendants allegedly "permitted" the media "to photograph and record and make notes on the media's observations and for the media's own stories and purposes." (Am Compl. ¶ 31.)

In sum, the amended complaint alleges in some detail how the Young defendants and Joseph Quatela conspired with and/or acted

_____

[6] In *Brunette*, the Ninth Circuit further noted that *Wilson v. Layne*, 526 U.S. 603 (1999), a case on which plaintiff relies, "speaks exclusively to whether a *police officer* violates the Fourth Amendment by inviting the media to ride-along during the execution of a search warrant. It provides no assistance in deciding whether the Media engaged in joint action sufficient to convert it into a state actor." *Id.* at 1211 (emphasis added).

jointly with state actors to trash and enter plaintiff's residence at 239 Nevada Street in order to violate plaintiff's constitutional rights, and then participated in the "warrantless search" of the premises with the County defendants. Accordingly, viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has alleged sufficient facts to support a "factual nexus" between the actions of Raymond L. Young, Raymond M. Young, Joseph Quatela, and state actors, *i.e.*, the County defendants, to support a claim of conspiracy or other joint action between private and state actors. *Wright v. Zabarkes*, 347 F. App'x 670, 671-72 (2d Cir. 2009); *see Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 396-97 (S.D.N.Y. 2006) (allegations of customer's complaint, that security guard who detained him had been sworn in as "special patrolman" by City and/or State of New York, and was thus "quasi-peace officer act[ing] under color of law," sufficiently alleged state action, as required to state cause of action under § 1983). However, the Court finds that the allegations in the amended complaint are insufficient to support a plausible claim that the media defendants were state actors. Plaintiff has failed to allege sufficient factual support for her conclusory contention that there was a "media ride along" in which the media defendants acted jointly with the County defendants to violate plaintiff's constitutional rights. Accordingly, the media defendants' motion to dismiss plaintiff's § 1983 claims is granted. Moreover, with respect to the other federal claims asserted against the media defendants (including under §§ 1982, 1985, and 1986), the Court also concludes that those claims cannot survive a motion to dismiss because of the absence of state action (in connection with §§ 1985 and 1986) and because of the other legal defects discussed *infra* with respect to the other

moving defendants. Thus, all federal claims are dismissed against the media defendants.

## 2. Underlying Violations

Plaintiff brings three claims pursuant to § 1983. Specifically, plaintiff claims violations of the Fourth Amendment and the Fourteenth Amendment, and the existence of a conspiracy under § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). As set forth below, the Court grants the Young defendants' motion to dismiss and Joseph Quatela's motion for judgment on the pleadings with respect to plaintiff's Fourteenth Amendment claims but concludes that plaintiff has adequately pled claims under § 1983 for violation of the Fourth Amendment and conspiracy.

## a. Fourth Amendment Claim

Plaintiff asserts a claim under § 1983, arguing that defendants violated her Fourth Amendment rights by unlawfully entering the premises at 239 Nevada Street and conducting a warrantless search of the property. The Young defendants move to dismiss this claim on the ground that they owned the premises in question; therefore, they argue, there was no illegal search because any search that was performed was made with the consent of an authorized party—namely, the owners of the property. Plaintiff contends that she and her children possessed exclusive use and occupancy of the subject premises and, accordingly, had a reasonable expectation of privacy in the property. Thus, plaintiff asserts that the Young defendants could not offer valid consent to a search of such property.

The Court concludes that the determination of whether the Young defendants had the authority to consent to a search of the premises by the police involves determination of questions of fact, which the Court is unable to resolve at this stage.

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1995) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable *per se*, one jealously and carefully drawn exception recognizes the validity of searches with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (quotations and citations omitted); *accord United States v. Matlock*, 415 U.S. 164, 169-70 (1974); *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 167 (2d Cir. 2002) ("A search conducted pursuant to consent by an authorized third party does not require probable cause or a warrant." (citing *Matlock*, 415 U.S. at 171 n.7)). Depending on the circumstances, "[t]hat person might be the householder against whom evidence is sought, or a fellow occupant who shares common authority over property . . . ." *Randolph*, 547 U.S. at 109 (citing *Schneckloth*, 412 U.S. at 222 and *Matlock*, 415 U.S. at 170). More specifically, "[t]he law in this circuit is well settled that a third party's consent will validate a search of places or items in which another maintains a privacy interest if two conditions are satisfied: the third party had (1) 'access to the area searched,' and (2) either '(a) common authority over the area; or (b) a

substantial interest in the area; or (c) permission to gain access [to the area].'" *United States v. Snype*, 441 F.3d 119, 136 (2d Cir. 2006) (quoting *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 53 (2d Cir. 2003)).

As a threshold matter, the Court notes that the consent of one who possesses common authority over the premises is valid as against absent, nonconsenting persons with whom the authority is shared. *Matlock*, 415 U.S. at 170. "Thus, in any third party consent case, the issue to be resolved is whether the consenting party possessed a sufficient relationship to the searched premises to validate the search. Mutual use of property, or joint access or control of property, is generally sufficient." *United States v. Trzaska*, 859 F.2d 1118, 1120 (2d Cir. 1988) (citations omitted).

Plaintiff asserts that defendant Raymond L. Young did not possess common authority over the marital residence, mutual use, or "joint access or control" for most purposes. (Pl.'s Opp. to Young Defs.' Mot. at 31.) Plaintiff alleges that, since 2003, Raymond L. Young did not live at or possess joint access or control over the home at 239 Nevada Street. (*Id.*) Plaintiff further contends that the *Matlock* case noted that the relevant basis for "common authority" "does not adhere to the law of property ownership, but rather upon shared use of the property." (*Id.* at 32.) As a result, plaintiff contends that any alleged consent by the Young defendants to a search was a nullity.

The determination of whether a party possesses common authority over an area, a substantial interest in the area, or permission to gain access to the area is fact-dependent; ownership of property is not a determinative factor. The Supreme Court explained in *Matlock*:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171 n.7. Thus, the existence of common authority over or a substantial interest in property is not necessarily demonstrated by ownership of the property; rather, it is a factual question that cannot be determined at this stage based on the pleadings in this case. Accordingly, the Court cannot make this determination on defendants' motion to dismiss. *See United States v. Munoz*, 590 F.3d 916 (8th Cir. 2010) ("'Common authority' is determined by 'mutual use, joint access, and control, and is a question of fact.'" (citation omitted)); *see, e.g.*, *Chapman*, 365 U.S. at 616-17 (rejecting the government's argument that "a landlord has an absolute right to enter the demised premises 'to view waste,' and that he should

be able to exercise that right through law enforcement officers to whom he has delegated his authority"); *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992) (holding that owner of footlocker possessed a substantial interest in footlocker sufficient to justify search not solely because he was the owner, but because "it was his trunk[, which he kept in his bedroom,] and he [still] kept personal items of some importance in it"); *Trazaska*, 859 F.2d at 1120 (holding that a wife could consent to search of apartment even though wife no longer lived in apartment with defendant because she "had only recently moved out of the apartment, . . . still possessed a key to the apartment, [and] she [removed] some personal belongings from the apartment during the search"); *United States v. Long*, 524 F.2d 660, 661 (9th Cir. 1975) (holding that a wife who was joint owner of house had right to give consent even though husband had changed locks, because "her husband was not her lessee who had the exclusive right of possession of the house"); *United States v. Venizelos*, 495 F. Supp. 1277, 1283-85 (S.D.N.Y. 1980) (finding that the owner of a home could consent to search of bedroom that had been occupied by non-paying guest because "when the officers arrived at her home, [the homeowner] was in complete and exclusive control of her home"). *But see United States v. Hayes*, No. 2:05-CR-52, 2006 WL 6307297, at *3 n.3 (D. Vt. May 5, 2006) ("Given that Hepner did not live full-time at Hayes's residence, that she lacked a key, and that there was no evidence that she came to the house when Hayes was not there, it would arguably have been unreasonable for the police to conclude that she had common authority. Nor is there any evidence to suggest that she had a substantial interest, such as an ownership or leasehold interest in the property."). Specifically, Ms. Young alleges that she possessed exclusive

right of possession of the house; thus, the Young defendants' ownership of the house is not determinative of this issue. Because the Court is unable to determine whether the Young defendants possessed common authority over or a substantial interest in the residence at 239 Nevada Street in which plaintiff and her children resided on February 21, 2007, the Young defendants' motion to dismiss and Quatela's motion for judgment on the pleadings on this ground is denied.

### b. Fourteenth Amendment Claims

Plaintiff brings two claims under the Fourteenth Amendment: that the unlawful entry and search of her premises was a violation of her right to equal protection, and that the search, and its attendant circumstances, constituted an unlawful taking of her property. The defendants move to dismiss on the ground that plaintiff has failed to state a claim for either cause of action. The Court addresses each of these claims in turn and concludes that these claims cannot survive a motion to dismiss.

### 1. Equal Protection Clause

Plaintiff brings a claim under the Fourteenth Amendment, alleging that she was deprived of "equal protection under the laws" of the United States. (Am. Compl. ¶¶ 64, 68.) The Young defendants move to dismiss this claim on the ground that plaintiff has not alleged that she was a member of a protected class or group or was treated differently than similarly situated persons. The Court agrees. Plaintiff has failed to allege sufficient facts to support a plausible claim under the Equal Protection Clause against any defendant.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiff does not allege a violation of equal protection due to her membership in a protected group or class, but an individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the "class of one" theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562 (2000). Under a "class of one" equal protection claim, a plaintiff must allege that (1) "[she] has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Willowbrook*, 528 U.S. at 564; *see also Giordano v. City of N.Y.*, 274 F.3d 740, 743 (2d Cir. 2001). In order to state an equal protection violation under § 1983, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

The Court realizes that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" to defeat a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted); *see also Malone v. City of N.Y.*, No. 05 Civ. 2882 (DGT), 2006 WL 2524197, at *4 (E.D.N.Y. Aug. 30, 2006) ("[D]istrict courts have applied *Swierkiewicz* to Section 1983 claims." (citing *Dean v. N.Y. City Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004), and *Tamayo v. City of N.Y.*, No. 02 Civ. 8030 (HB), 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004))). As the Second Circuit has observed, at the motion to dismiss stage, there is no "requirement that a plaintiff identify in [his] complaint actual instances

where others have been treated differently for the purposes of equal protection," nor must a plaintiff "'name names' in [his] complaint" with regard to those similarly situated. *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003). Instead, where, plaintiff makes no more than a "general allegation that similarly situated" persons have been treated differently, such an allegation is "sufficient, albeit barely, to meet the minimal level established by *Olech* for 'class of one' equal protection claims at the pleading stage." *Id.*; *cf. Simpson v. Town of Southampton*, No. 06-CV-6743 (JFB) (WDW), 2007 WL 1755749, at *6 (E.D.N.Y. June 15, 2007).

However, in the instant case, plaintiff has not even made cursory allegations that she was treated differently than anyone else, let alone someone else similarly situated. The only allegation in the amended complaint regarding plaintiff's equal protection claim are as follows: "defendants did conspire, for the purpose of depriving, the plaintiff equal protection of the laws, or equal privileges and immunities under the laws, and that the defendants acted in furtherance of the object of the conspiracy, and that the plaintiffs were injured and deprived of having and exercising any right or privilege of a citizen of the United States," (Am. Compl. ¶ 47), and "[e]ach of the defendants knew or had reason to know that their actions and inactions would deprive the plaintiffs of equal protection under the laws, yet the defendants conspired with each other to deprive such rights." (*Id.* ¶¶ 64, 68.) Although the Court recognizes the minimal requirements for pleading such a claim, the complete absence of any alleged basis for equal protection violations, or reference to similarly situated people being treated differently, warrants the dismissal of this claim against all defendants. Because plaintiff has failed to allege that she was treated differently than others who were similarly situated, her equal protection claim fails as a matter of law. *See DeVito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 WL 2033722, at *6 (E.D.N.Y. Aug. 23, 2005).

2. Takings Clause/Condemnation

Plaintiff next contends that the "unlawful invasion" of 239 Nevada Street constituted a condemnation of her property without compensation. The Young defendants argue that plaintiff cannot seek relief for "condemnation of property without compensation," based upon allegations that the Young defendants alone caused the damage, because there is no state action. As discussed *supra*, plaintiff has adequately alleged the existence of a conspiracy or joint action between the Young defendants, Joseph Quatela, and the state actor defendants that would be sufficient "to cloak them with state action." *Doe v. Smith*, 704 F. Supp. 1177, 1188 (S.D.N.Y. 1988). These same allegations are sufficient to cloak the Young defendants and Quatela with state action for the purpose of this claim. However, the Court concludes that plaintiff nonetheless fails to state a claim for deprivation of her property without compensation because she has failed to allege any deprivation of property that resulted from the alleged conduct by the defendants on February 21, 2007.

The Fifth Amendment guarantees that no one will "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "[T]he [F]ifth [A]mendment is deemed to allow state and local governments broad power to regulate housing conditions without paying compensation for all resulting economic injuries." *Sadowsky v. City of N.Y.*,

732 F.2d 312, 317 (2d Cir. 1984). The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *E.g.*, *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir. 1994).

To plead a taking under the Fifth (or Fourteenth) Amendment, a plaintiff must allege (1) that plaintiff possessed a valid property interest and (2) that there was a taking of that property interest under color of state law, without compensation. *See, e.g.*, *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003); *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992); *West 95 Hous. Corp. v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 01 CIV 1345 SHS, 2001 WL 664628, at *9 (S.D.N.Y. June 12, 2001).

From the face of the amended complaint, the specifics of plaintiff's condemnation claim are unclear.[7] In particular, plaintiff contends that "[t]his" (presumably, the warrantless search of her home), "constitutes an [sic] condemnation of property without compensation since Deborah had lost a valuable and lawful use to which the property may be applied." (Am. Compl. ¶ 22.) Although the residence at 239 Nevada Street may constitute property of which plaintiff was deprived, plaintiff does not allege that she was deprived of this property. It is also not alleged that the value of the property declined as a result of the events of February 21, 2007. Although plaintiff claims that her rights were violated by the government taking of land and

chattels, she does not identify any other property or chattels of which she was deprived as a result of the events alleged in the amended complaint. *Mejia ex rel. Ramirez v. City of N.Y. ex rel. Human Res. Admin.*, No. 01 Civ. 3381 (GBD), 2004 WL 2884407, at *5 (S.D.N.Y. Dec. 10, 2004) ("[P]laintiffs have failed to allege that a taking has even occurred."). Plaintiff's claims are "conclusory assertions [that] are not entitled to the assumption of truth," and plaintiff's allegations do not "plausibly support the reasonable inference that" plaintiff is entitled to relief. *See Iqbal*, 129 S. Ct. at 1951. Accordingly, the Court concludes that plaintiff has failed to state a claim for an unconstitutional taking under the Fourteenth Amendment.

c. Conspiracy under § 1983

Plaintiff alleges that the defendants participated in a conspiracy to deprive plaintiff of her constitutional rights. The Court concludes that plaintiff has adequately stated a cause of action for conspiracy under § 1983 as against the Young defendants, Joseph Quatela, and the County defendants. As discussed *supra*, given the allegations in the amended complaint that the Young defendants and Quatela conspired with the County defendants to deprive plaintiff of her constitutional rights, which was sufficient to allege that those defendants were state actors, there is no basis to dismiss the § 1983 conspiracy claim as conclusory. *See, e.g.*, *O'Connor v. City of St. Paul*, No. Civ. 01-846 (MJD)(SRN), 2001 WL 1677605, at *5 (D. Minn. Dec. 21, 2001) ("In the Amended Complaint, Plaintiffs do allege that [the Secretary of Local 21] took actions to deprive Plaintiffs the right to keep their promotional benefits as Secretary of Local 21, and that the union worked in concert with the City of St.

---

[7] The Court further notes that it is unclear from the amended complaint and from oral argument whether plaintiff is even asserting a Fifth Amendment takings claim. However, out of an abundance of caution, the Court presumes that plaintiff did intend to assert such a claim and analyzes it accordingly.

Paul to ensure the guarantee of the promotional rights was distinguished. Accordingly, for purposes of [the Secretary of Local 21's] motion to dismiss, the Court finds that Plaintiffs have stated a claim against [the Secretary of Local 21] under Section[s] 1983 and 1985."). Accordingly, the Young defendants' motion to dismiss and Quatela's motion for judgment on the pleadings regarding plaintiff's cause of action for a conspiracy under § 1983 are denied.

### B. § 1982

Defendants next argue that plaintiff has failed to state a claim for relief under § 1982. Specifically, defendants point out that plaintiff has not alleged that she is a member of a racial minority, and, therefore, she may not bring an action under § 1982. The Court agrees.

"To state a claim under [§ 1982], plaintiff must allege facts in support of the following elements: (1) [she is a] member of a racial minority; (2) defendant[ intended] to discriminate on the basis of [her] race; (3) the discrimination concerned one or more activities enumerated in [§ 1982], such as . . . the purchase and lease of property." *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 700 (S.D.N.Y. 1996).

The amended complaint's factual allegations make no mention of plaintiff's race or that of her children. Even liberally construed, plaintiff's amended complaint fails to allege any facts relating to race. Thus the claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713-14 (2d Cir. 1994) (dismissing claims based on plaintiff's conclusory assertions of race and gender discrimination);

*see also Wei Hong Zheng v. Wong*, No. 07 Civ. 4768 (FB)(JO), 2009 WL 2601313, at *7 (E.D.N.Y. Aug. 24, 2009) ("Under the standard recently articulated by the Supreme Court, a plaintiff must plead sufficient 'factual content [to allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Chan fails to satisfy that standard with respect to her sex discrimination claim, which, accordingly, must be dismissed." (quoting *Iqbal*, 129 S. Ct. at 1949)); *Ercole v. U.S. Dep't of Transp.*, No. 07 Civ. 2049 (JFB), 2008 WL 4190799, at *6-7 (E.D.N.Y. Sept. 10, 2008) (finding *pro se* complaint did not meet Rule 12(b)(6) pleading standards where complaint had no factual allegations to support vague and conclusory assertion that plaintiff was subject to unlawful discrimination); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 717-18 (D. Conn. 2003) (dismissing complaint based in part on the fact that no factual allegations were provided in support of discrimination claim). Accordingly, plaintiff's § 1982 claim is dismissed for failure to state a claim.

### C. § 1985

Plaintiff also alleges a conspiracy to deprive her of her right to equal protection, in violation of 42 U.S.C. § 1985(3).[8] Defendants

---

[8] As a threshold matter, plaintiff argues that state action is not a necessary prerequisite for a claim of conspiracy under § 1985(3). However, the Second Circuit has held to the contrary: "[A] claim under § 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (affirming district court's dismissal of a complaint that alleged that "all defendants conspired to deprive her of equal protection of the laws in violation of 42 U.S.C. § 1985(3)" when not all defendants were state actors (citing *United*

move to dismiss this claim on the ground that plaintiff has not alleged that the conspiracy is motivated by class-based discriminatory animus, which is a required allegation for claims under § 1985. The Court agrees.

Section 1985(3) prohibits conspiracies by two or more persons that interfere with and injure any person's civil rights. More specifically, the four elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Sec.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (internal citation omitted). "Furthermore, the conspiracy must also be motivated by 'some

---

*Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 831-32 (1983)); *see also Petrusa v. Suffolk County Soc'y for Prevention of Cruelty to Animals*, No. 05-CV-6017 (DRH), 2009 WL 1796996, at *7 (E.D.N.Y. June 24, 2009) ("These vague and conclusory allegations fail to set forth a plausible conspiracy claim under § 1985 as they fail to allege that any of the Defendants are state actors, or that any of the Defendants acted in concert with a state actor to deprive Plaintiff of his constitutional rights."). Accordingly, plaintiff may not assert this claim against the media defendants, which, as discussed *supra*, were not adequately pled to be state actors.

racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *United States Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)). Because plaintiff's amended complaint fails to allege any class-based, invidious discrimination, it fails to state a claim under § 1985(3). *See Lucas v. N.Y. City*, 842 F. Supp. 101, 104 (S.D.N.Y. 1994) (holding plaintiff failed to state claim under § 1985(3) when complaint was devoid of any such allegations). Moreover, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (internal citations omitted). Therefore, plaintiff fails to state a cause of action under § 1985, and the claim is dismissed as asserted against all defendants.

### D. § 1986

Plaintiff also brings a claim against all defendants under § 1986. "Section 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (citation and quotation marks omitted). However, § 1985 liability is a necessary predicate to a § 1986 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) (affirming dismissal of § 1986 claim where district court also dismissed § 1985 claim). Here, because the Court dismisses plaintiff's conspiracy claims under § 1985 for the reasons discussed *supra*, the Court must also

dismiss plaintiff's claims under § 1986. *See, e.g.*, *O'Bradovich v. McGuire*, 325 F. Supp. 2d 413, 426-27 (S.D.N.Y. 2004) ("Plaintiffs' inability to state a claim for conspiracy under § 1985 is, in turn, fatal to their § 1986 claim."). Thus, to the extent plaintiff attempts to state a claim under § 1986, that claim must also be dismissed as against all defendants.

### E. State Law Claims

Plaintiff's amended complaint also alleges pendent state law claims for intentional infliction of emotional distress and defamation.[9] The Young defendants move to dismiss these claims based on *res judicata* and collateral estoppel grounds. All defendants move to dismiss these claims based on the statute of limitations. As set forth below, the Court agrees and concludes that all state claims should be dismissed.[10]

### 1. *Res Judicata* and Collateral Estoppel

The Young defendants argue that plaintiff's state law claims, as asserted against

---

[9] Although the Young defendants contend that plaintiff's claims of "trespass" and "invasion of privacy" are also barred by *res judicata* and collateral estoppel, the Court notes that plaintiff's amended complaint does not allege free-standing claims for trespass or invasion of privacy. In fact, plaintiff's counsel confirmed at oral argument that the state claims are limited to intentional infliction of emotional distress and defamation.

[10] The Court concludes that exercising pendent jurisdiction over all of the state law claims against all defendants, including the media defendants who have had the federal claims against them dismissed, is warranted because the legal issues are straightforward and applicable to all defendants. Thus, the exercise of pendent jurisdiction in this case promotes the interests of judicial economy, convenience, and fairness.

them, are barred by the doctrines of *res judicata* and collateral estoppel. In particular, defendants note that there was a prior Suffolk County court proceeding between these parties. Defendants argue that, as a result of those prior proceedings, plaintiff's claims of defamation and intentional infliction of emotional distress have already been dismissed by Justice Whelan of New York State Supreme Court, Suffolk County. Defendant also argues that because plaintiff admitted to neglect of the children based upon the conditions that were found in the home at 239 Nevada Street on February 21, 2007, she cannot now assert that the Young defendants caused those conditions.

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment. *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[T]he defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment."); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.), *cert. denied*, 506 U.S. 821 (1992). In addition, the relevant facts for the Court to analyze this issue, namely the decision in the Supreme Court for the State of New York, Suffolk County action, are public documents subject to judicial notice, and are not in dispute. *See Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging

those facts.").

The doctrine of *res judicata*, otherwise known as claim preclusion, prevents parties from re-litigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). Because the prior decision at issue was rendered by a New York State court, New York's transactional analysis of *res judicata* governs, *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982), an analysis which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This transactional approach "does not . . . permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *Beckford v. Citibank N.A.*, No. 00 Civ. 205, 2000 U.S. Dist. LEXIS 15549, at *9-10 (S.D.N.Y. Oct. 24, 2000) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church*, 502 N.E.2d 978, 981 n.2 (N.Y. 1986)). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). Finally, "[i]n determining whether a second suit is barred by this

doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999). Furthermore, in evaluating the *res judicata* effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."[11] *In re Hyman*, 502 F.3d 61, 65 (2d

---

[11] The Second Circuit has stated that, where a party is seeking to enforce a New York judgment, New York law is applied. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment and New York law in determining the preclusive effect of a New York State court judgment." (internal citations omitted)); *see also* 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State .

Cir. 2007) (citations omitted). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)).

In the instant case, defendants have raised a *res judicata*/collateral estoppel argument with respect to plaintiff's claims of defamation and intentional infliction of emotional distress. It appears from the text of Justice Whelan's opinion that the intentional infliction of emotional distress claim was denied for failure to state a cause of action on the merits; the opinion seems to suggest that the dismissal was due to insufficient pleading. "[T]he dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects." *Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 399 & n.3 (1981)). Plaintiff's claim for defamation was also dismissed for failure to properly plead. Justice Whelan noticed that plaintiff's complaint failed to set forth "the particular words complained of," and failed to identify the particular person or persons to whom the allegedly defamatory statements were made. Thus, the doctrines of *res judicata* and collateral estoppel demand the dismissal of these claims from plaintiff's suit. In addition, for the reasons discussed below, plaintiff's intentional infliction of emotional distress and defamation claims are time barred.

2. Statute of Limitations

All moving defendants argue that the one-year statute of limitations bars plaintiff's actions for defamation and intentional infliction of emotional distress. Plaintiff responds that she has alleged "ongoing, continuing violations" of law, rather than "single isolated events." The Court concludes that plaintiff's state law claims are barred by the statute of limitations and, further, that plaintiff has failed to adequately plead a cause of action for defamation under either a theory of slander or libel.

Plaintiff filed her original complaint in this matter on July 30, 2009. Federal courts "apply state statutes of limitations to intentional tort claims." *Rock v. Mustich*, No. 08-CV-4976 (CS)(PED), 2009 WL 2391776, at *5 (S.D.N.Y. Aug. 3, 2009) (citing *Hargett v. Metro. Transit Auth.*, 552 F. Supp.2d 393, 399 (S.D.N.Y. 2008)). The applicable statute of limitations for slander, libel, and intentional infliction of emotional distress under New York state law is one year. *See* N.Y. C.P.L.R. § 215(3); *see also Balkanli v. City of N.Y.*, No. 07-CV-2204, 2009 WL 1346736, at *2 (E.D.N.Y. May 14, 2009) ("Claims of intentional infliction of emotional distress, libel, and slander are subject to a one-year statute of limitations under New York law."); *Rock*, 2009 WL 2391776, at *5 (citing *Gallagher v. Directors Guild of Am., Inc.*, 533 N.Y.S.2d 863 (App. Div. 1988) (intentional infliction of emotional distress); *Williams v. Arpie*, 391 N.Y.S.2d 740 (App. Div. 1977) (defamation)). Thus, to withstand the Young defendants' motion to dismiss, plaintiff must allege a tortious act occurring on or after July 30, 2008.

Plaintiff's amended complaint fails to allege any actions relevant to her intentional

. . from which they are taken.").

infliction of emotional distress claim that occurred on or after July 30, 2008. Plaintiff instead contends, in her opposition papers, that the Young defendants have engaged in an ongoing course of action intending to cause plaintiff and her children emotional distress. Plaintiff points to the action filed by her children's paternal grandparents, Raymond M. Young and Lucy Young, *Raymond M. Young and Lucy Young v. Deborah Young*, Index No. 2005-27931. However, plaintiff's amended complaint fails to include any allegations regarding that lawsuit. Moreover, according to the affidavit that plaintiff submitted in support of the order to show cause she filed at the commencement of the instant action, that lawsuit was filed on December 21, 2005 and dismissed on July 18, 2006, well outside the one-year statute of limitations on this claim. (Pl.'s Affidavit in Support (July 23, 2009).) Plaintiff's amended complaint discusses only the events of February 2007—namely, the alleged warrantless search of plaintiff's home at 239 Nevada Street and the ensuing court proceeding that removed plaintiff's children from her custody. The statute of limitations for those events expired in February 2008, one year from the time of the allegedly outrageous acts. *See, e.g.*, *Mariani v. Consol. Edison Co. of N.Y., Inc.*, 982 F. Supp. 267, 273-74 (S.D.N.Y. 1997). Accordingly, plaintiff's claim for intentional infliction of emotional distress is dismissed as against all defendants.

Plaintiff's slander and libel claims fail because they are also time-barred by the statute of limitations.[12] All of the claims in plaintiff's amended complaint relate to events in or around February and March 2007, which are barred by the one-year statute of limitations. Although each moving defendant raised the statute of limitations issue for plaintiff's defamation claim, plaintiff's opposition papers do not allege that the allegedly defamatory statements on which she bases her claim were made within the one-year statute of limitations for slander. Instead, plaintiff contends that many blogs, websites, or online articles regarding the February 21, 2007 incident still exist. However, under the single publication rule, the fact that a story remains available online does not restart the statute of limitations. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003); *Firth v. State of N.Y.*, 775 N.E.2d 463, 465-66

---

conclusory assertions that defendants made defamatory statements. New York C.P.L.R. § 3016(a) requires that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint." *Id.* Furthermore, "[i]n evaluating the sufficiency of claims of slander or libel, the courts in this Circuit have required that the complaint adequately identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Ello v. Singh*, 531 F. Supp. 2d 552, 580-81 (S.D.N.Y. 2007) (quoting *Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000)). Plaintiff has failed to allege any specifics regarding the statements and, in her opposition papers, does not even attempt to specify the statements to which she refers. Plaintiff has thus failed to identify those statements, the person or persons who made the statements, the time at which those statements were made, and the third parties to whom those statements were published. Thus, the plaintiff's amended complaint also fails to state a claim for slander or libel, and the Court dismisses this claim as against all defendants on that ground as well.

---

[12] The Court further notes that, in the alternative, plaintiff has failed to state a claim for slander or libel in her amended complaint. Plaintiff's amended complaint does not contain any details regarding the allegedly defamatory statements. Indeed, plaintiff's complaint contains only

(N.Y. 2002). Accordingly, the Court concludes that plaintiff's claims for slander and libel are barred by the statute of limitations.

## G. Custody

The Young defendants also argue that, because plaintiff does not currently have custody over her children, she lacks a custodial basis to bring any actions on their behalf. In response, plaintiff argues that she was the custodial parent of the children at the time when these events occurred and, accordingly, she is thus able to bring this action on their behalf. The Court agrees with the Young defendants and concludes that plaintiff cannot bring this lawsuit on her children's behalf. Thus, the caption of the amended complaint shall be modified to reflect that the lawsuit is only being brought by Deborah Young individually.

Under New York C.P.L.R. § 1201, "[u]nless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody, or, if there is no such parent, by another person or agency having legal custody . . . ." *Id.* Legal custody incorporates physical custody or, where someone other than a parent has physical custody, a judicial decree awarding custody to that person. *See Otero ex rel. Otero v. State*, 602 N.Y.S.2d 501, 502 (Ct. Cl. 1993) ("Because he is incarcerated, Jessica's father cannot have physical custody of her and thus does not have legal custody for the purposes of CPLR 1201."); *see also Bailey v. Tricolla*, No. CV-94-4597 CPS, 1996 WL 733078, at *4 n.9 (E.D.N.Y. Dec. 11, 1996) ("To have legal custody a parent must have physical custody."); *Debruyne v. Clay*, No. 94 CIV. 4704 (JSM), 1995 WL 51134, at *2 (S.D.N.Y. Feb. 8, 1995) ("Mr. deBruyne clearly is not a 'parent having legal custody' of plaintiffs, since physical custody is a necessary element of 'legal custody' within the meaning of § 1201."). Plaintiff admitted to neglect of her children and surrendered custody in February 2007,[13] and plaintiff does not currently have

---

[13] Specifically, the record from the transcript of those proceedings details the following exchange:

The Court: It's also my understanding that we'll be taking the admission with no promise. . . . Your children can be placed in foster care. I'm not saying it's going to happen but it could happen, do you understand that?

Ms. Young: Yes, your Honor.

The Court: And if you fail to maintain contact with your children or work with the Department it could result[] in you losing your rights to your children, do you understand that?

Ms. Young: Yes, your honor.

. . .

The Court: Mainly the fact that there is no promise as to what is going to happen down the [road] with your children are you still willing to make the admission of neglect?

Ms. Young: Yes, your Honor.

. . .

The Court: Ms. Young, in or about 2006 and continuing into 2007, up to February specifically of 2007, did you suffer from a mental health condition that negatively impacted your ability to care for your three children?

custody of her three children. (*See* Am. Compl. ¶¶ 24-27.) In fact, as noted *supra*, the Family Court recently awarded sole custody of the children to Raymond L. Young. Although plaintiff contends that her statements in court, which admitted to neglect of her children, were coerced, in fact, plaintiff previously sought to vacate her admission of neglect on these grounds. (*See* Order to Show Cause Ex. N.) The Honorable Hector D. LaSalle, Supreme Court, Suffolk County found, upon review of the transcript of those proceedings, that plaintiff's admission of neglect was knowingly and voluntarily made at that time, and was not conditioned on any promises made to her. Plaintiff failed to produce any evidence before that court in support of her application. Thus, although plaintiff now seeks to challenge the validity of her custody waiver before state court, she has already done so. Furthermore, plaintiff initiated the instant action with an Order to Show Cause with the purpose of having her children removed from foster care and returned to plaintiff's custody. (*See* Docket Sheet entry #2, Order to Show Cause: Denied.) The order was denied by Judge Joanna Seybert. Accordingly, the Court dismisses the claims that plaintiff brings on behalf of her children and dismisses the children as plaintiffs from the action.

### H. The Young Defendants' Motion for Sanctions

The Young defendants seek to impose sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against plaintiff and her counsel. Specifically, defendants claim that, in filing the complaint, plaintiff submitted a frivolous pleading that was not warranted by existing law or by a good-faith argument for the extension, modification, or reversal of existing law, or for the establishment of new law, and continued to pursue claims with no legal or factual basis. The Young defendants also argue that plaintiff's action has been interposed for an improper purpose and that the plaintiff has made sworn allegations of fact which contradict her prior admission to neglect which was made under oath. For the reasons that follow, the Young defendants' motion for sanctions is denied.

Under Rule 11, to avoid the risk of sanctions, a plaintiff's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks and citation omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

---

Ms. Young: Yes, I did.

Tr. of Proceedings, at 4-7, *Suffolk County CPS v. Young*, Nos. NN-3875-07, NN-3876-08, NN-3877-07 (N.Y. Fam. Ct., Suffolk County May 4, 2007).

The Court has no reason to believe, at this juncture, that any of the factual allegations have been made in bad faith, with knowledge of the falsity of the allegation. Moreover, there is no basis to conclude that the amended complaint is frivolous from a legal standpoint, as some of the claims against the Young defendants have survived defendants' motions to dismiss. Finally, the fact that certain claims did not survive a motion to dismiss does not warrant the imposition of sanctions in this case. *See, e.g.*, *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *see also Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987) (finding Rule 11 sanctions unwarranted, even when "[t]he evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law."); *Scientific Components Corp. v. Sirenza Microdevices, Inc*., No. 03 Civ. 1851(NGG), 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v.*

*Yes Clothing Co.*, No. 90 Civ. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."). *See generally Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (warning against the use of "hindsight logic" that "because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation").

In sum, there is insufficient basis to conclude that plaintiff or her counsel filed this action in bad faith or that any other grounds for sanctions are present. If the Young defendants, following discovery, cannot demonstrate that the factual allegations are false, and were known to be false at the time of the filing of the complaint, or that any other grounds for sanctions exist, then they can renew their motion for sanctions at that time. *See, e.g.*, *Baskin v. Lagone*, No. 90 Civ. 5478 (RPP), 1993 WL 59781, at *6 (S.D.N.Y. Mar. 3, 1993) ("Because it is not entirely clear, and it is in any event premature to ascertain, that the Plaintiffs' Amended Complaint is not grounded in fact or warranted by existing law, as Rule 11 requires before sanctions can be imposed, the motion for sanctions is denied.").

Accordingly, the Young defendants' motion for sanctions under Rule 11 is denied.

IV. CONCLUSION

For the foregoing reasons, the media defendants' motion to dismiss is granted in its entirety as to all federal and state claims. The motions by the Young defendants and defendant Quatela are denied with respect to the § 1983 claim for violation of the Fourth Amendment and conspiracy but granted as to

all other federal and state claims. The Young defendants' motion for sanctions is also denied.

Defendants are directed to file answers to the amended complaint, if they have not already done so, within twenty days of this Memorandum and Order, and the parties are directed to conduct discovery in accordance with the direction of Magistrate Judge Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 9, 2010
Central Islip, New York

\* \* \*

The attorney for plaintiff is Thomas F. Liotti of Law Offices of Thomas F. Liotti, 600 Old Country Road, Suite 530, Garden City, NY 11530. The County defendants are represented by Arlene S. Zwilling, Suffolk County Attorney, P.O. Box 6100, H. Lee Dennison Building-Fifth Floor, 100 Veterans Memorial Highway, Hauppauge, NY 11788-0099. Defendant Joseph Quatela is represented by Scott E. Kossove of L'Abbate, Balkan, Colavita & Contin, 1050 Franklin Avenue, Garden City, NY 11530. The Young defendants are represented by Michael H. Joseph of Law Office of Michael H. Joseph PLLC, 184 Martine Avenue, White Plains, NY 10601. The media defendants are represented by Edward J. Davis, Laura R. Handman, and Victor Day Hendrickson of

Davis Wright Tremaine LLP, 1633 Broadway New York, NY 10019 and 1919 Pennsylvania Ave., NW, Suite 200, Washington, DC 20006.